the second count was bad under the penitentiary act, because it did not charge a battery.

CRANCH, Chief Judge, doubted of this, because the murder of a slave is a felony, and an assault with intent to commit a felony is a misdemeanor, at common law.

October 18, 1834. A new indictment was this day found by the grand jury against the defendant. The first count was for publicly and cruelly beating Harry, a slave. Second count for assault and battery with intent to murder the slave, Harry.

Mr. Brent, for the defendant, moved to quash the indictment, because, he contended, it was not an offence to assault and beat a slave, even with intent to murder him.

THE COURT (nem. con.) refused to quash the indictment, without prejudice to a motion in arrest of judgment, if the verdict should be against the defendant.

---

## Case No. 15,618.

### UNITED STATES v. LLOYD.

[4 Cranch, C. C. 470.] [1]

Circuit Court, District of Columbia. Oct. Term, 1834.

#### BEATING SLAVE—COMMON-LAW OFFENCE.

The owner of a slave who beats him cruelly, and exposes him, so beaten, to public view is guilty of a misdemeanor at common law.

Indictment [against Richard B. Lloyd] for beating his own slave Henry, cruelly, and exposing him, so beaten, to public view.

Verdict guilty, and amerced by the jury $100.

Mr. Brent, for the defendant, moved in arrest of judgment, because the indictment, as he contended, did not state an indictable offence, and cited Turner's Case (1827) 5 Rand. (Va.) 678, and U. S. v. Brockett [Case No. 14,651], in this court, some years ago, for cruelly beating his own slave. He also moved for a new trial, on the ground of misdirection by the court to the jury; and because the verdict was against evidence.

THE COURT overruled both motions, and rendered judgment for the amount assessed by the jury.

---

## Case No. 15,619.

### UNITED STATES v. LLOYD.

[4 Cranch, C. C. 472.] [1]

Circuit Court, District of Columbia. Oct. Term, 1834.

#### ASSAULT AND BATTERY — INDICTMENT—VERDICT—WITNESS.

1. Upon an indictment for assault and battery on M. H. with intent to kill him, a verdict, "Guilty of an assault by shooting M. H. with intent to kill," is substantially a general verdict of guilty.

[1] [Reported by Hon. William Cranch, Chief Judge.]

2. An indictment under the penitentiary act for assault and battery with intent to kill, need not aver it to be done with malice aforethought, nor with any other evil intent than the intent to kill.

3. Upon a suggestion that a witness, whose affidavit had been taken in support of a motion for a new trial, was an idiot, the court required the witness to be brought in and examined in court, but refused to order another witness whose affidavit had also been taken for the same purpose, to be brought in and examined, his affidavit not being impeached.

Indictment [against Richard B. Lloyd] for assault and battery on Moses Hepburn, with intent to kill him. Verdict, "guilty of an assault by shooting Moses Hepburn with intent to kill, but not with malice aforethought."

The second count charged that the defendant, &c., at &c., "with force and arms in and upon one Moses Hepburn, in the peace of God and the said United States, did make an assault, and him the said Moses Hepburn, did then and there beat, shoot, and ill treat, with intent him the said Moses, then and there to kill, and other wrongs and injuries then and there did, to the great damage of the said Moses, against the peace and government of the United States, and against the form of the statute in such case provided."

Upon a motion in arrest of judgment, W. L. Brent, for defendant, objected that the verdict did not find a battery; and that the indictment does not charge the manner of shooting, kind of weapon, kind of shot, &c.; and does not state that the defendant unlawfully assaulted the said Hepburn; and cited 1 Russ. 585. It might have been done in his own defence.

THE COURT (THRUSTON, Circuit Judge, contra) was of opinion that the second count, and the verdict thereupon, were sufficient.

THRUSTON, Circuit Judge, thought that the indictment should have charged that the assault and battery was wilful, unlawful, or malicious, and should have set forth the manner of the beating and the weapon, &c.

Upon a subsequent argument (on the 11th of October, 1834), Mr. Brent and Mr. Fauntleroy, for defendant. cited 1 Chit. Cr. Law, 227, 228, 233, 242, 245, 276, 286. 643; and Mr. Key, for the United States, cited Chit. 644.

PER CURIAM. This is substantially a verdict of guilty; for the shooting of a man is, in law, a battery upon that man, and the assault and the intent to kill are expressly found. The statute does not require that the act should be done with malice aforethought. The finding, therefore, that it was not done with malice aforethought is an immaterial finding, and is surplusage. The jury, therefore, have found every thing necessary to constitute the statute offence. We do not think it can be necessary, in an indictment upon this clause of the statute, to aver any other evil intent than the intent to kill, which is expressly averred; for it would be tautology to say that the defendant, with evil intent made an assault and battery on the man with intent to kill him.

In support of a motion by the defendant's counsel, at the last term, he produced the affidavit of a woman named Frances Tattersall. Upon a suggestion that she was an idiot, THE COURT (CRANCH, Chief Judge, absent) required that she should be brought into court and examined by the judges.

The defendant now offered the affidavit of Francis Lloyd for the same purpose.

Mr. Key, for the United States, requested that this witness also should be brought in and examined in court. Mr. Brent, for the defendant, objected and said, it was not usual to examine witnesses in court upon a motion for a new trial.

THE COURT (MORSELL, Circuit Judge, contra) refused to cause the witness to be brought in and examined in court, and granted a new trial upon newly-discovered evidence; and the cause was afterwards transferred to Washington for trial.

---

UNITED STATES (LOCKE v.). See Case No. 8,442.

---

## Case No. 15,620.

### UNITED STATES v. LOCKMAN.

[Brunner, Col. Cas. 554;[1] 11 Law Rep. 151.]

Circuit Court, D. Massachusetts. 1848.

CRIMINAL LAW—SETTING FIRE TO VESSEL—MINOR.

1. A minor who ships on board a vessel without the knowledge of his parents may be convicted of the offense of burning a vessel on the high seas.

2. On an indictment for setting fire to a vessel on the high seas, the mere possibility that the fire might be occasioned by spontaneous combustion, or by accident, is no answer to strong probable evidence against the prisoner; in criminal cases a jury must act on strong probabilities.

This indictment charged that Lyman Lockman, on the 20th of April, 1848, "on the high seas, did wilfully and corruptly burn the ship William Thompson, of New Bedford, he, the said Lockman, then and there being a mariner on board thereof, and belonging to said ship William Thompson. And the said ship William Thompson being the property of citizens of the United States, and said Lockman not being an owner of said ship." It was founded on St. 1804, c. 40, § 1, which provides that "any person not being an owner who shall, on the high seas, wilfully and corruptly cast away, burn, or otherwise destroy any ship or other vessel unto which he belongeth, being the property of any citizen or citizens of the United States, or procure the same to be done, and being thereof lawfully convicted, shall suffer death." The fire took place at the Sandwich Islands. It appeared that the vessel, which was a whaler, in April, 1847, a few hours after she set sail for the northwest

1 [Reported by Albert Brunner, Esq., and here reprinted by permission.]

coast, at about nine or ten o'clock in the evening, was found to be on fire in the forehold. She was taken back into port and found to be considerably damaged by fire. In a few weeks she was repaired and went on her voyage. Several of the crew were seized and charged with the offense, but on examination before the consul, Lockman was sent home to be tried, with two witnesses against him. The vessel arrived at New Bedford the 1st of April, 1848.

It was testified on the part of the government that a grating which separated the forecastle from the forehold, where the fire was, had been broken; that the forehold had in it a great deal of old junk, rigging, tar, etc.; that the prisoner was seen working at the bulkhead, and creeping out of the forehold through the hole; that the prisoner had said "that he had been in the forehold; that he had got some tar and rope-yarn in a sack, and would burn the ship before he would go to the northwest coast in her; that he had tried to fire the ship before, but he had only two matches, and they would not go"; that after the fire he had said that "he wished he had a spade, and he would cut off the captain's head"; that after the fire, the prisoner having been flogged to make him tell what he knew about it, he said, in reply to the question if he knew who did it, "that he did not know anything else." It also, appeared that the vessel had been previously on fire, and that at that time the prisoner was confined, and two others of the crew were sent home charged with that offense; that the conduct of the captain was harsh; that the crew were also dissatisfied with their grub, and said they wished the vessel sunk or burned before they had to go in her. It was further shown that the owners acted as citizens of the United States. On the part of the prisoner it was testified that there were great complaints among the crew of the William Thompson; that they were generally dissatisfied; that several had been heard to say they would throw the captain overboard or sink the ship before they would go on to the northwest in her; that Lockman was under age, not twenty; that he shipped without the knowledge or consent of his father; and that he was quiet and orderly on board ship.

Charles L. Woodbury, for the United States.

Charles M. Ellis, for the prisoner.

THE COURT desiring the question of law in the case to be stated, the counsel for the prisoner contended that the evidence did not support the indictment, the evidence being that the prisoner was brought into the United States prior to the time alleged in the indictment; that there was no legal contract binding the prisoner to service in the ship, and therefore he did not belong to the ship under the statute, which did not apply to passengers, persons from other ships, or the